IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **RENEE PUGH,** | ) | |
| | ) | |
|     **PLAINTIFF,** | ) | |
| | ) | |
| V. | ) | CASE NO. _____ |
| | ) | |
| **EL PASO CORPORATION** | ) | |
| **PENSION PLAN, and THE** | ) | |
| **PENSION COMMITTEE OF** | ) | |
| **EL PASO CORPORATION** | ) | |
| **PENSION PLAN,** | ) | |
| | ) | |
|     **DEFENDANT.** | ) | |

## COMPLAINT

1. This action arises under the Employee Retirement Income Security Act of 1974 [29 U.S.C. §§1001 et seq.](hereinafter ERISA), and more particularly, §§ 502(a)(1)(B) and 502(a)(3)(B) of ERISA [29 U.S.C. §1132(a)(1)(B) and §1132(a)(3)(B)].

2. This Court has jurisdiction of this matter pursuant to 29 U.S.C. §1132(e), 28 U.S.C. §1331, and 28 U.S.C. § 2201.

3. Venue is proper in the Northern District of Alabama because a substantial part of the events giving rise to the claims occurred in the Northern District of Alabama and the Defendants engage in substantial and ongoing business activities within the Northern District of Alabama.

4.     The Plaintiff, Renee Pugh, (hereinafter "Pugh") is an adult resident of Jefferson County, Alabama, and is a "beneficiary" as that term is used in 29 U.S.C.§ 1002(8) of ERISA.

5.     Defendant El Paso Corporation Pension Plan (hereinafter "the Plan") is a qualified employee's pension or retirement plan within the meaning of 29 U.S.C. §1002 of ERISA.  In this case, the Plan refers to the "Sonat Inc. Retirement Plan as Amended and Restated Effective June 1, 1985."  The Sonat Inc. Retirement Plan was merged with the El Paso Corporate Pension Plan effective January 1, 2000.

6.     Defendant Pension Committee of the El Paso Corporation Pension Plan (hereinafter "the Committee") is the Plan Administrator and fiduciary of the Plan as defined in 29 U.S.C. § 1002(16)(A).  The Committee has been delegated responsibility for administering the Plan by the Plan sponsor and exercises authority and discretion to interpret and administer the Plan, and makes determinations concerning eligibility and benefits in relation to the Plan.

7.     James Marlin Pugh (hereinafter "JMP") was a long time employee of Sonat Inc.  In 1985 he was 53 years old and had worked for Sonat Inc. for over 10 years, and as such, he had a vested benefit under the Plan.  On October 1, 1985, JMP received a letter from Lloyd W. Rotton, Sonat, Inc. Assistant Vice President of Personnel, informing him that his job had been eliminated as of October 1, 1985 as a part of an early retirement offering.

8.     The October 1, 1985 letter from Sonat Inc. was an offer of a severance package to JMP in exchange for his early retirement. The letter set out the terms of the agreement between JMP and Sonat, Inc.

2

(hereinafter the "Agreement").  As an inducement to accept the Agreement, Sonat Inc. amended the Plan to allow for the payment of early retirement benefits in excess of the participant's vested amount and in excess of the benefit payment that would ordinarily be paid if the participant was terminated prior to age 55.

9.      Under the Agreement, JMP had the option of accepting severance pay of $30,184.33 and deferring the payment of the Early Retirement Benefit until he reached the age of 55.  JMP accepted the Agreement including the early retirement benefits and severance pay, and chose to defer his retirement payments until he reached the age of 55.

10.     The Agreement provided that:  "Upon your death, the Company agrees to pay your "Eligible Family Members", as defined in the Retirement Plan, a survivors' benefit equal to 75% of your total monthly Early Retirement Benefit…(less the amount of a Social Security Supplement under the agreement)."  The Agreement was subject to the terms of the Plan, and the terms of the Plan were expressly incorporated into the Agreement.

11.     JMP's employment terminated on October 1, 1985.  JMP turned 55 years of age on January 18, 1987. At that time he submitted a request to begin receiving retirement benefits effective February 1, 1987 and JMP's retirement benefits commenced in February 1987.

12.     A January 9, 1987 letter from J. Kelly Pitts, Benefits Coordinator at the Company represented to JMP that upon his death, his Eligible Spouse at the time his retirement benefits commenced would be entitled to receive a lifetime benefit equal to 75% of JMP's life annuity benefit.  Based upon

3

this representation, JMP submitted a verification of marital status listing the Plaintiff, Renee Pugh, as his spouse, and indicating that the Plaintiff would be his spouse on the day his retirement benefit commenced, February 1, 1987.

13. Further representations were made in a November 24, 1986 memorandum entitled "Sonat Inc. Retirement Plan." The memorandum informed the participants of changes made to the Plan. The memorandum contained the following representations:

> "Under the new provisions of the Retirement Plan, your Eligible Spouse will be the person who was married to you throughout the one year period ending on the earlier of the date your retirement benefits begin or the date of your death."

> "If a Participant and his or her spouse have been married for one year on the date the Participant's retirement benefits begin, that spouse will be an Eligible Spouse and will receive the 75% Survivor's Benefit, even if the Participant later divorces and remarries."

14. In a January 28, 1987 letter from J. Kelly Pitts, Benefits Coordinator, JMP was informed of the recalculation of his Joint and Survivor Annuity Benefit, and was asked to submit another Retirement Election Form. JMP signed the election form on January 30, 1987 marking the Election of Joint and Survivor Annuity. The Joint and Survivor selection on the election form represented that in the event of his death, his spouse was to receive 50% of the benefit because she was his spouse on the date his retirement commenced, and that as an "Eligible Spouse" she would receive the 75% Retiree's Survivor Benefit.

4

15.     JMP and the plaintiff were married on January 2, 1982. They were divorced pursuant to a divorce decree issued by the Circuit Court of Jefferson County Alabama on June 20, 2011.  The divorce decree specifically provided that the Plaintiff retained all of her right title and interest in any benefits to which she was entitled under the Plan, including any survivor benefits.

16.     JMP died on January 1, 2012.  At that time, the divorce was final and there was no pending action for divorce or legal separation, the Plaintiff and JMP had been married for more than one year prior to his death and the Plaintiff had not remarried.

17.     On February 18, 2012 the Plaintiff was informed by way of a letter from the El Paso Benefits Service Center that she was a beneficiary under the Plan, and entitled to receive a survivor benefit under the Plan beginning the first month following JMP's death.  The Plaintiff submitted the requested paperwork to begin receiving the survivor benefit.  The Plaintiff requested that she receive not only the 50% survivor annuity payable under the 50% joint and survivor annuity, but also the 75% Retiree Survivor's Benefit because she was an Eligible Spouse.

18.     In a March 29, 2012 letter, the Plan agreed that the Plaintiff was entitled to the 50% joint and survivor annuity benefit.  However, the Plan denied the Plaintiff's claim to receive the 75% Retiree's Survivor Benefit. The letter sets out the reason for the denial as follows:

> "We are denying your claim because the terms of the Plan are clear that for participants who terminated prior to July 24, 1986, the term "Eligible Spouse," to whom a Retiree's

5

Survivor Benefit is payable, is limited to a spouse to whom the participant is married at the time of his death."

19. The March 29, 2012 letter further stated:

"Section 1.22 <u>Eligible Spouse</u> of the Plan in effect on the date Mr. Pugh terminated, provided that in order to be considered an "Eligible Spouse" of a participant, a person must have been married to the Participant at least one year prior to the date of the participant's death, not be a party to a court action for judgment of separation or decree of divorce, and not have subsequently remarried."

20. The Plaintiff timely requested review of the decision.

21. On September 5, 2012, the Defendants upheld the denial of the 75% Retiree's Survivor Benefit to the Plaintiff.  The denial stated "…the definition of Eligible Spouse applicable to Ms. Pugh's claim requires her to have been married to Mr. Pugh on the date of Mr. Pugh's death.

22. The denial of the 75 % Retiree's Survivor Benefit by the Defendants is inconsistent with the applicable terms of the Plan, and is further inconsistent with the material representations made to JMP and the Plaintiff in the letters dated October 3, 1985, January 28, 1987, and January 9, 1987, and the memorandum of November 24, 1986; all of which were justifiably relied upon by the Plaintiff and JMP to make retirement planning decision.

23. The Plaintiff is a Spouse, and Eligible Family Member, an Eligible Spouse and a Beneficiary as those terms are defined in the Plan.  Further, the Plaintiff is a third party beneficiary to the Agreement for Early

6

Retirement between JMP and Sonat Inc.  Plaintiff has exhausted all administrative remedies.

24.     The Plan governing the benefits in this case is the Sonat Inc. Retirement Plan as Amended and Restated Effective June 1, 1985."  The Sonat Inc. Retirement Plan was merged with the El Paso Corporate Pension Plan effective January 1, 2000.

25.     Section 1.21 of the Plan defines Eligible Family Member as follows: "The Eligible Spouse or Eligible Child of a deceased Participant."

26.     Section 1.50 of the Plan defines Spouse as follows:  "Except as provided in Section 6.02(b), the person who was married to the Participant under the laws of the State where the marriage was contracted at least one year as of the earlier of (i) the date on which the Retirement Benefits or Vested Benefits commence or (ii) the date of the Participant's death."

27.     Section 1.22 of the Plan defines Eligible Spouse as follows:  "The husband or wife of a deceased participant, who (i) was married to the Participant under the laws of the State where the marriage was contracted at least one year prior to the date of his death, (ii) is not a party to a court action for judgment of separation or decree of divorce pending at the time of the Participant's death, and (iii) subsequent to the Participant's death has not remarried."

28.     Section 7.06 of the Plan provides, in material part, as follows: "…upon the death of a Participant who is both a Retired Employee and receiving or eligible to receive a Retirement Benefit from this Plan at the date of his death, the Participant's Eligible Family Members shall be

7

entitled to receive a monthly benefit (a Retiree Survivors Benefit") equal to 75% of the Retirement Benefit being paid to the Participant under the Plan at the date of the Participant's death; …"

29. Section 7.10 of the Plan provides that the benefits payable to the Eligible Family Members, including the Eligible Spouse are payable for the life of the Eligible Family Member.

30. The benefits claimed by the Plaintiff are benefits due and vested under the Plan, and Plaintiff has complied with all conditions in order to receive such benefits.

31. The Defendant have erroneously interpreted the Plan provisions regarding defining Eligible Spouse in denying the claim of the Plaintiff for the 75% Retiree's Survivor Benefit.

32. The decision of the Defendants to deny the Plaintiff the 75% Retiree's Survivor Benefit due under the Plan was arbitrary, capricious, not made in good faith, unsupported by substantial evidence, erroneous as a matter of law and in violation of ERISA.

33. As a direct and proximate result of the actions of the Defendants, the Plaintiff has been caused to incur attorneys fees in an amount not currently known to the Plaintiff.

34. As a direct and proximate result of the actions of the Defendants the Plaintiff has lost benefits in an amount not currently known in full by the Plaintiff, but upon information and belief such loss approximates the amount of benefits due under the terms of the Plan for each month since

February 2012, and the Plaintiff will continue to sustain additional damages and loss of benefits each month until the benefits are paid in full.

## COUNT ONE
### Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B)

35.     The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

36.     The Plaintiff brings this action pursuant to and prays for relief under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to the Plaintiff under the terms of the Plan.

37.     The Plaintiff claims that she is entitled to the 75% Retiree Survivor's Benefit pursuant to the terms of the Plan.

## COUNT TWO
### Enforcement of Rights Under 29 U.S.C. §1132(a)(1)(B)

38.     The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

39.     The Plaintiff brings this action pursuant to and prays for relief under 29 U.S.C. § 1132(a)(1)(B) to enforce her rights under the terms of the Plan.

## COUNT THREE

### Clarification of Rights under 29 U.S.C. §1132(a)(1)(B)

40.     The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

41.     The Plaintiff brings this action pursuant to and prays for relief under 29 U.S.C. § 1132(a)(1)(B) for the Court to clarify her rights to future benefits under the terms of he Plan.

## COUNT FOUR

### Equitable Relief Under 29 U.S.C. §1132(a)(3)(B)

42.     The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

43.     The Plaintiff brings this action pursuant to and prays for relief under 29 U.S.C. § 1132(a)(3)(B) in the form of appropriate equitable relief, including, but not limited to the reformation of the terms of the Plan, the imposition of equitable estoppel against the Defendants to prevent the denial of benefits, and the imposition of a surcharge upon the Defendants, ordering them to pay to the Plaintiff the benefits that she is due in equity, and for any other or further equitable relief to which the Plaintiff is entitled.

## COUNT FIVE
### Breach of Contract / Breach of Fiduciary Duty

44. The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

45. Defendants and JMP entered into an Agreement regarding his termination of employment, a severance package and the receipt of early retirement benefits and survivor's benefits.

46. The Plaintiff was and is a third party beneficiary to the Agreement between the Defendants and JMP.

47. The terms of the Agreement were to provide early retirement benefits to JMP in an amount set out in the Agreement, and upon his death to pay survivor's benefits, including the 75% Retiree's Survivor Benefit to Eligible Family Members.

48. The Defendants have failed or refused to perform their obligations under the Agreement, and further have breached their fiduciary duties under ERISA by failing to pay all benefits due to the Plaintiff under the Plan.

## COUNT SIX
### Misrepresentation

49. The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

50.   The Defendants, acting separately and severally, and acting through their agents, did by their conduct and language make misrepresentations of material fact regarding the Plan, benefits under the Plan, and provisions of the Plan.

51.   The Defendants were aware of the true facts and the terms of the Plan.

52.   The Defendants knew and intended that JMP and the Plaintiff would rely upon and act upon the representations because the representations were made in the course of the offer, acceptance, and processing of benefits in exchange for early retirement.

53.   JMP and the Plaintiff were unaware of the fact that the representations of the Defendants were false, and they justifiably relied upon the representations of the Defendants in planning for their retirement, making a permanent detrimental reliance upon the representations.  The reliance was particularly justified due to the position of the Defendants as fiduciaries who have superior knowledge of the nature and extent of benefits under the Plan.

## COUNT SEVEN
### Declaratory Judgment

54.   The Plaintiff incorporates and adopts the allegations contained in the preceding paragraphs as if fully set out here.

55.     There is a justiciable controversy between the Defendants and the Plaintiff as to her entitlement and right to the Retiree's Survivors Benefit under the Plan, and such controversy is within the jurisdiction of the Court.  Pursuant to 28 U.S.C. § 2201, the Plaintiff seeks a declaration by the Court of the rights and other legal relations between the parties.

WHEREFORE PREMISES CONSIDERED, the Plaintiff prays for the following relief:

a.    Order the Defendants to pay to the Plaintiff the 75% Retiree's Survivor Benefit retroactive to February 2012 and further order benefits to be paid in accordance with the Plan in the future;

b.    Enter an order clarifying that the Plaintiff is an Eligible Spouse as that term is used in Section 1.22 of the Plan, and as such, order the Defendants to pay to the Plaintiff the 75% Retiree's Survivor Benefit retroactive to February 2012 and further order that the benefit be paid in accordance with the Plan in the future;

c.    Enter and order reforming the terms of the Plan so as to include the Plaintiff under the definition of Eligible Spouse in Section 1.22 of the Plan;

d.    Order the Defendants to pay a surcharge to the Plaintiff in an amount equal to the amount of the 75% Retiree's Survivor's Benefit under the Plan retroactive to February 2012 and further order that the surcharge be paid monthly as long as the Plaintiff lives or until she remarries;

e.    Enter an order that the Defendants are equitably estopped from denying the Plaintiff's claim for the 75% Retiree's Survivor's Benefits;

f.      Enter an order awarding the Plaintiff an amount equal to the 75% Retiree's Survivor Benefit from February 2012 to the present and each month as long as the Plaintiff lives or until she remarries;

g.      Enter an order declaring that the Plaintiff is entitled to the 75 Retiree's Survivor's Benefit under the terms of the Plan;

h.      Enter an order awarding the Plaintiff the costs of this action and a reasonable sum for attorney's fees to be paid by the Defendant to the Plaintiff;

i.      Enter and order finding that the Defendant's denial of the Plaintiffs claim for the 75 % Retiree's Survivor's Benefit was arbitrary and capricious, and a breach of their duties, obligations and responsibilities to the Plaintiff, and

j.      Enter an order for any further or other equitable or legal relief to which the Plaintiff may be entitled in law or equity.

Respectfully Submitted,

*/s/ William K. Bradford*
Attorney for Plaintiff
asb-6434-d64w

**OF COUNSEL:**
Bradford Ladner, LLP.
3928 Montclair Road, Suite 208
Mountain Brook, AL 35213
205-802-8823
205-802-8825 fax
wkb@bradfordladner.com

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS TO WHICH SHE IS SO ENTITLED**

*/s/ William K. Bradford*
Attorney for Plaintiff
asb-6434-d64w