FILED

2014 Oct-28  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RENEE PUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:13-cv-01581-AKK** |
| **EL PASO CORPORATION PENSION** | ) | |
| **PLAN; and THE PENSION COMMITTEE** | ) | |
| **OF EL PASO CORPORATION PENSION** | ) | |
| **PLAN,** | ) | |
| | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION

Renee Pugh ("Ms. Pugh") is the recipient of a 50% Joint and Survivor Benefit under a retirement plan in which she and her former husband were participants. In her lawsuit against El Paso Corporation Pension Plan and the Pension Committee of El Paso Corporation Pension Plan ("El Paso"), Ms. Pugh is alleging that El Paso wrongfully denied her an additional 75% Retiree Survivor benefit. *See* doc. 1 at 1-8. El Paso denies that it has engaged in any wrongdoing and has filed a motion for summary judgment, docs. 18, 20, which is fully briefed and ripe for review, *see* docs. 22, 24, 25. Based on a review of the evidence and the law, the court finds that the motion is due to be granted because Ms. Pugh has not shown that El Paso's interpretation of the retirement plan was *de novo* wrong or,

alternatively, that El Paso's interpretation was unreasonable and not made in good faith.

## I.    SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S. H. Kress*

& Co., 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all

justifiable inferences must be drawn in the non-moving party's favor).  Any factual

disputes will be resolved in Plaintiff's favor when sufficient competent evidence

supports Plaintiff's version of the disputed facts.  *See Pace v. Capobianco*, 283

F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes

in the non-moving party's favor when that party's version of events is supported by

insufficient evidence). However, "mere conclusions and unsupported factual

allegations are legally insufficient to defeat a summary judgment motion." *Ellis v.

England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain

Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere

'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the jury could reasonably find for that

party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*,

477 U.S. at 252)).

## II.    FACTUAL BACKGROUND

### A. The Sonat, Inc. Retirement Plan

Ms. Pugh's former husband worked for Sonat, Inc. and was a participant in

the Sonat, Inc. Retirement Plan ("the Plan"). The Plan, which was merged with

The El Paso Corporation Pension Plan on January 1, 2000, doc. 19-1 at 3, is a

defined benefits program, doc. 19-4 at 53. Contributions to the pension fund are

made by Sonat and other participating companies, which do not pay pensioners out of their respective general funds. Doc. 19-2 at 29-30. Administration of the Plan, the sole power to interpret the Plan, and the responsibility of carrying out the Plan provisions are vested in a committee of at least three members. *Id.* at 31.

At issue here are the Retirement or Vested Benefit and the Retiree Survivor Benefit provisions of the Plan, and, in particular, what it means to qualify as an "Eligible Spouse." Article 6.02(b) defines the Retirement or Vested Benefit and supplies a provision for Participants that are married:

> The form of Retirement or Vested Benefit payable to a Participant who has a Spouse at the time such Benefit commences shall be a benefit payable monthly for the life of the Participant, with a monthly benefit equal to 50% of the Participant's monthly benefit payable to the Participant's surviving spouse after the Participant's death for the rest of such Spouse's lifetime (the "Joint and Survivor Form"). For purposes of this Section and Section 6.03, the term "Spouse" shall mean the person who was married to the Participant at the date the Participant's Benefit commences under the laws of the State where the marriage was contracted.

*Id.* at 22. Article 7 provides a Retiree Survivors Benefit to "Eligible Family Members:"

> [U]pon the death of a participant who is both a Retired Employee and receiving or eligible to receive a Retirement Benefit . . . from the Plan at the date of his death, the Participant's Eligible Family Members shall be entitled to receive a monthly benefit (a "Retiree Survivors Benefit") equal to 75% of the Retirement benefit being paid to the Participant under the Plan at the date of the Participant's death.

*Id.* at 27. "Eligible Family Members" is defined in Article 1 as "[t]he Eligible

Spouse or Eligible Child of a deceased Participant," *id.* at 6, and an "Eligible

Spouse" is

> [t]he husband or wife of a deceased Participant, who (i) was married to the Participant under the laws of the State where the marriage was contracted at least one year prior to the date of his death, (ii) is not a party to a court action for judgment of separation or decree of divorce pending at the time of the Participant's death, and (iii) subsequent to the Participant's death has not remarried."

*Id.* An August 1, 1986, amendment, doc. 19-5 at 33-48, changed the definition to

read

> (b) with respect to a participant who (i) had a Termination of Continuous Employment on or after January 1, 1983 and before July 24, 1986, (ii) died on or after July 24, 1986, and (iii) had met the conditions necessary for the receipt of a Retirement Benefit . . . on the date of the Participant's death, the person who was married to the Participant under the laws of the State where the marriage was contracted throughout the one year period ending on the date of the Participant's death.

*Id.* at 33.

## B. James Pugh's Employment Termination and Pension Election

James Pugh ("Mr. Pugh"), Ms. Pugh's former husband, worked for Sonat,

Inc. for over ten years. Doc. 19-3 at 57. At his termination on October 1, 1985, Mr.

Pugh elected to defer his early retirement benefits until the age of 55 in exchange

for severance pay. Docs. 19-9 at 17; 19-7 at 3. When his early retirement

commenced on February 1, 1987, Mr. Pugh elected to receive a "Joint and

Survivor Annuity" which paid him $980 per month during his life and, upon his

death, paid 50% of his benefit to Ms. Pugh who was still his wife at the time. Doc. 19-6 at 56. Moreover, according to the election form, if Mr. Pugh had an "Eligible Spouse at the time [his] retirement commenc[ed]," she would receive a 75% survivor's benefit. *Id.* Ms. Pugh is contending in this lawsuit that she is an "Eligible Spouse."

### C. Mr. Pugh's Death, Ms. Pugh's Claim for the Survivor's Benefit, and her Claim for an Additional 75% Under the Plan.

Some time after Mr. Pugh died on January 1, 2012, doc. 19-9 at 29, Ms. Pugh received a "Benefit Notice and Election Package" notifying her that "[a]s the beneficiary of a retiree from the El Paso Corporation Pension Plan, [she was] entitled to receive a survivor benefit . . . ," doc. 19-11 at 16. The letter informed Ms. Pugh of her entitlement to a $528.65 per month "single life monthly annuity," which was approximately 50% of Mr. Pugh's retiree benefit at the time of his death. *Id.* at 18. Thereafter, Ms. Pugh submitted a claim for the additional 75% Retiree Survivor's Benefit, contending that she was an "Eligible Spouse." Doc. 19-6 at 24-35.  In connection with her claim, Ms. Pugh informed El Paso that she and Mr. Pugh divorced in June of 2011, approximately six months before Mr. Pugh died. *Id*. at 33-35. El Paso denied Ms. Pugh's claim, citing §1.22 of the Plan which defined "Eligible Spouse" as the husband or wife of a deceased beneficiary who was married to the deceased "at least one year prior to the date of death." Doc.19-5

at 77-79. Additionally, the denial letter cited the August 1, 1986 amendment to the definition of "Eligible Spouse." *Id.* at 78.

**D. Ms. Pugh's Appeal**

Ms. Pugh appealed the denial of her claim, arguing that applying the amended definition of "Eligible Spouse" violated the Employee Retirement Income Security Act (" ERISA") anti-cutback provision, 29 U.S.C. § 1054. Doc. 19-9 at 8-12. Additionally, Ms. Pugh asserted that because Mr. Pugh was entitled to "an Early Retirement Benefit" on November 1, 1985, El Paso should have determined his "Accrued Benefit" as of November 1, 1985, before the August 1, 1986 amendment became effective. *Id.* at 8-9. Central to Ms. Pugh's argument to the Fiduciary Committee ("the Committee") was the theory that, under the pre-amendment definition, she qualified as an "Eligible Spouse." *Id.* at 11.

Kinder Morgan, Inc., the sponsor of the Plan, upheld the denial of Ms. Pugh's claim based on the pre-amendment definition of "Eligible Spouse." Doc. 19-8 at 1-4. Kinder Morgan explained that "[t]he Pension Committee has a statutory duty under ERISA Section 404(a)(1)(D) to interpret the terms of the Plan consistent with ERISA, and so interprets the terms of the Amendment related to terminations prior to July 24, 1986, as a clarification and restatement of the terms contained in Section 1.22 of the Sonat Plan prior to the Amendment, as it has always been interpreted." *Id.* at 3. Ultimately, Kinder Morgan interpreted clause (i)

of §1.22 to require that the beneficiary be married to the participant "throughout the one-year period immediately prior to the participant's death." *Id.*

## III.  ANALYSIS

### A. Judicial Review of ERISA Denials

Ms. Pugh takes issue with El Paso's interpretation of §1.22, and asserts that it improperly denied her benefits she is due as an "Eligible Spouse" and asks the court to enforce her rights and to clarify her right to future benefits. Doc. 1 at 9-13; *see also* doc. 17 (dismissing Counts IV-VI of Ms. Pugh's complaint). To review virtually all ERISA plan benefit denials, the Eleventh Circuit mandates a six step test. *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Lift Assurance Co. of Boston*, 542 F.3d 1352 (11th. Cir 2008); *White v. The Coca-Cola Company*, 542 F.3d 848, 853 (11th Cir. 2008). The six step test instructs courts to:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Wayton v. United Mine Workers of Am. Health and Ret. Funds, et al.,* 2014 U.S. App. LEXIS 10644 at *7 (11th Cir. June 9, 2014); *Blankehship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

## B. The Committee's Interpretation and Application of the Plan was not "*De Novo* Wrong"

The court must first determine whether El Paso's interpretation of §1.22 was "*de novo* wrong." *Blankenship*, 644 F.3d at 1355. "A decision is 'wrong' if, after *de novo* review, 'the court disagrees with the administrator's decision'." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1198, 1196 (11th Cir. 2010) (quoting *Williams v. Bellsouth Telecommunications, Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) *overruled on other grounds by Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350 (11th Cir. 2011)). Moreover, "[t]he court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator. If the court determines that the Plan administrator was right, the analysis ends and the decision is affirmed." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). Where, as

here, the interpretation of a policy term is at issue, the court must determine whether the term is ambiguous. *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1550-51 (11th Cir. 1994). An ERISA plan is ambiguous if it is susceptible to two or more reasonable interpretations where one results in coverage and another results in exclusion. *See Billings v. UNUM Life Ins. Co. of America*, 459 F.3d 1088, 1094 (11th Cir. 2006); *see also Harrison v. Aetna Life Ins. Co.*, 925 F. Supp. 744, 749 (M.D. Fla. 1996). However, a plan is not ambiguous simply because a contract requires interpretation. *Flamingo South Beach I Condominium Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 Fed. App'x 16, 19 (11th Cir. 2012). If an ambiguity exists, the court must then determine whether the claimant has proposed a reasonable alternative interpretation that can rival the administrator's interpretation. *Mordecai v. Standard Insurance Co.*, 157 Fed. App'x. 99, 101 (11th Cir. 2005); *Lee,* 10 F.3d at 1550. If the claimant establishes a reasonable interpretation, then under *contra proferentem*, the court accepts her interpretation as the correct interpretation. *Lee*, 10 F.3d at 1551.

Unfortunately for Ms. Pugh, her interpretation of §1.22 is unreasonable because it hinges on an incomplete reading of the definition of "Eligible Spouse." Basically, to establish that she qualifies as an "Eligible Spouse," Ms. Pugh focuses on three of the elements a person must meet, and asserts that she meets the criteria because:

10

      1. She was married to James Pugh at least one year prior to his death
      2. She was not a party to a pending divorce or separation action [and]
      3. She has not remarried after James Pugh's death.

Doc. 24 at 12. However, these are not the only requirements for qualifying as an "Eligible Spouse" under the Plan. More specifically, Ms. Pugh's construction ignores the very first condition of §1.22, i.e. that the claimant be a "husband or wife of a deceased participant." Doc. 19-2 at 6. There is no indication in §1.22 or the subsequent verbiage that an ex-spouse qualifies as a "husband or wife." In fact, to read §1.22 as stating that "husband or wife" also refers to an "ex-spouse" would grant more rights under the Plan to ex-spouses than to spouses who are still technically married but are parties to a "court action for judgment of separation or decree of divorce pending at the time of the Participant's death." *Id*. Such a reading of §1.22 would be nonsensical and contrary to its plain language. Put differently, a reasonable interpretation of §1.22, taking into account its plain language, cannot simply ignore the initial clause (i.e. that one be a "husband or wife of a deceased participant") or strip words of meaning. *See Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 585 (11th Cir. 1997) ("a court must first examine the natural and plain meaning of a policy's language") (citations omitted); *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741 (Ala. 2000) ("[w]here there is no indication that the terms of the contract are used in a

special or technical sense, they will be given their ordinary, plan, and natural meaning.")

Moreover, Ms. Pugh's claim that she is an "Eligible Spouse" is based on unrelated provisions of the Plan that have no applicability to the Retirement Survivors Benefit covered by §7.06. Specifically, Ms. Pugh attempts to utilize the defined term "Spouse,"[1] which applies to clauses outside of §7.06, to argue that she "meets all the requirements of the various provisions in the Plan concerning who is or is not a 'spouse' or 'eligible spouse.'" Doc. 24 at 13-14. This argument, however, ignores that a "Spouse" under §6.02 (which states unequivocally that "for purposes of this section . . . shall mean the person who was married to the Participant <u>at the date the Participant's benefit commences</u> . . ." (emphasis added)) is different from an "Eligible Spouse" in §1.22 (a definition that specifies must consist of "the husband or wife of a deceased Participant"). In fact, Ms. Pugh's

_____

[1] §1.50 defines "Spouse" as the person who was married to the Participant under the laws of the State where the marriage was contracted at least one year as of the earlier of (i) the date on which Retirement Benefits or Vested Benefits commence or (ii) the date of the Participant's death. Doc. 19-2 at 12. In this case, the earlier date is clause (i) and consequently Ms. Pugh qualified as a "Spouse" despite her subsequent divorce for the Joint and Survivor Benefit. This distinction is further underscored by section 6.02, which states "[f]or purposes of this section and Section 6.03, the term "Spouse" shall mean the person who was married to the Participant at the date the Participant's Benefit commences under the laws of the State where the marriage was contracted." Doc. 19-2 at 22. In other words, for the Joint and Survivor Benefit, as long as a person was married to the participant when the benefits commenced – Feb. 1, 1987 in Ms. Pugh's case, doc. 19-6 at 56 – a subsequent divorce does not impact one's qualification as a "Spouse."

contention actually undermines her ultimate position because of the presumption of consistent usage of defined terms throughout a contractual document. *Cf. U.S. v. Castleman*, 134 S. Ct. 1405, 1417 (Mar. 26, 2014) (Sotomayor, J.) ("[t]here are good reasons to give the phrase [appellant's] interpretation. One is the presumption of consistent usage – the rule of thumb that a term generally means the same thing each time it is used."). Consequently, the logical inverse is that where the defined term (in this case "Spouse") is substituted in a different section by a similar word or phrase (i.e. "husband or wife"), a material difference in meaning is intended by the contracting parties. After all, the drafters of the Plan could have easily included "former-wife" within the meaning of "Eligible Spouse" by using the defined term "Spouse" in the place of "husband or wife" in §1.22. *See* doc. 19-2 at 6, 12. If the drafters had substituted "Spouse" in §1.22 for "husband or wife," resulting in a clause that begins an "Eligible Spouse" is the "[Spouse] of a deceased Participant . . . ," then Ms. Pugh's proffered explanation that "one year prior to the date of his death" means *any* one year, and that subsection (ii) was drafted because of the uncertainty of divorce litigation, *see* doc. 24 at 12-15, 20-21, could be characterized as a reasonable interpretation because she could then argue that the parties affirmatively intended to include former husbands and wives as "Eligible Spouses." The court cannot make such a finding, however, because the 75% Retiree Survivors Benefit Ms. Pugh seeks is not available to a "Spouse." Rather, it

13

is only available to an "Eligible Family Member," a term that includes an "Eligible Spouse," and whose attendant definition utilizes language that is positively different than the §1.50 definition of "Spouse" that Ms. Pugh wants the court to use instead. *See* doc. 19-2 at 27. Therefore, consistent with the *Williams* analysis, because the court agrees with the administrator's interpretation and the subsequent decision denying coverage, the court must affirm the administrator's decision. *See Glazer*, 524 F.3d at 1246.

### C. Alternatively, even if the Committee was *de novo* wrong, reasonable grounds supported their decision.

Because the Plan vests the Committee with "the exclusive power to interpret it, and the responsibility for carrying out its provisions . . . ," doc. 19-2 at 31, the court must evaluate the Committee's decision under the "arbitrary and capricious" standard of review and must determine whether reasonable grounds supported its decision, *see Wayton,* 2014 U.S. App. LEXIS 10644 at *7; *Blankehship*, 644 F.3d at 1355. "As long as a reasonable basis appears for [the] decision [of the Committee], it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *White*, 542 F.3d at 856 (quoting *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)). In other words, the court is limited, at this stage, "to determining whether [the Committee's decision] was made rationally and in good faith – not whether it

was right." *Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984).

The court finds that the Committee made a rational, good faith determination regarding the Retiree Survivor's Benefit for several reasons, chief among them being that the Committee asserted a rational basis for its interpretation of §1.22. Specifically, the Committee pointed out that

> It makes no sense to interpret clause (i) to mean that an Eligible Spouse could be an ex-spouse to whom the participant was married during *any* one-year period prior to the participant's death, but with respect to whom a divorce was final on the date of the participant's death. If an ex-spouse as of the date of death was considered an Eligible Spouse, clause (ii) would make no sense. There would simply be no reason to disallow a benefit to a spouse with whom divorce proceedings were pending only to allow such benefits for an ex-spouse with respect to whom the divorce was final. Furthermore, if clause (i) were interpreted to allow marriage during *any* one-year period prior to the participant's death, then survivor's benefits could be payable to multiple Eligible Spouses, which is not contemplated by the Plan.

Doc. 19-8 at 3 (emphasis in original). This interpretation qualifies as a reasonable basis for the decision and, as such, is due to be upheld.

The court is not persuaded by Ms. Pugh's contention that the Committee's decision does not meet the reasonable basis standard. To support this contention, Ms. Pugh asserts El Paso "attempts to disprove Pugh's interpretation of the Plan provision by carrying it to an absurd extreme; [an] extreme that is eliminated by other Plan provisions." Doc. 24 at 19. According to Ms. Pugh, the "absurd

extreme" - the issue of multiple "Eligible Spouses" in §7.06 - is solved by §1.50's definition of "Spouse," a defined term that does not appear at all in §7.06, *id.*; doc. 19-2 at 27, and that when the Plan is interpreted "as a whole," her construction of "Eligible Spouse" is consistent with other definitions of "Spouse" because, by reading the definition of "Spouse" from §1.50 into the definition of "Eligible Spouse" in §1.22, and ultimately into §7.06, the problem of multiple "Eligible Spouses" is solved. Doc. 24 at 19-20, 22-23. Ms. Pugh's arguments are unavailing because, as noted in section B *supra*, the terms "Eligible Spouse" and "Spouse" are not related and, therefore, the multiple "Spouse" problem is not eliminated by other provisions. In other words, because the defined term "Spouse" does not appear in §7.06, and because the definition of "Eligible Spouse" in §1.22 does not use the defined term "Spouse" to limit eligibility to one person, Ms. Pugh's solution requires the interpreter to arbitrarily include a term that is notably absent. Reading the Plan document as a whole, it is clear that the term "Eligible Spouse" defines one class of survivors eligible for the Retiree Survivors Benefit under §7.06 while "Spouse" refers to a separate class that is eligible for certain benefits outside of §7.06. Doc. 19-2 at 19-30. To apply the defined term "Spouse" to §7.06 and its attendant definitions would force the reader to ignore the totality of the document. The court declines to do so especially where, as here, the Committee asserts that the 1985 definition of the term "Eligible Spouse," which affirmatively

indicates the identity of a beneficiary under §7.06 through the term "Eligible Family Member," was drafted precisely to solve the problems that might arise when there are potentially multiple claimants to a benefit. Doc. 19-8 at 3.

Moreover, as the Committee also pointed out, construing the 1985 definition of "Eligible Spouse" differently than the 1986 amended definition would result in it engaging in conduct prohibited by ERISA's anti-cutback provisions. *See* 29 U.S.C. §1054(g). Indeed, the Plan states that "[n]otwithstanding any other provision of the Plan, no Plan amendment (including the provisions effective as of the Effective Date) shall be applied in such a way as to reduce the Accrued Benefit (whether or not vested) of any participant prior to the effective date of such amendment." Doc. 19-2 at 54. The Committee explained this in its decision, stating that it "has a statutory duty under §404(a)(1)(D) to interpret the terms of the Plan consistent with ERISA, and so interprets the terms of the Amendment related to terminations prior to July 24, 1986, as a clarification and restatement of the terms contained in §1.22 of the Sonat Plan prior to the Amendment, as it has always been interpreted." Doc. 19-8 at 3.

For all these reasons, even assuming *arguendo* that the Committee's interpretation was "*de novo* wrong," the court finds that the Committee's construction was reasonable and well within its grant of discretionary authority. Therefore, the Committee's decision is due to be upheld. *See White*, 542 F.3d at

856 ("As long as a reasonable basis appears for [a plan administrator's] decision . . . , it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision."). Because the undisputed facts indicate no conflict of interest[2], the analysis must end here and El Paso's motion for summary judgment must be granted.

### III.   CONCLUSION

As Ms. Pugh concedes, "the operative facts of the case are essentially undisputed." Doc. 24 at 5. Accordingly, the only question is whether El Paso is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For the reasons described above, the court finds that the Committee's initial decision was not *de novo* wrong and, therefore, El Paso's motion is due to be granted. The court will enter a separate order consistent with this opinion.

**DONE** the 28th day of October, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[2] While contributions to the Plan are made by participating employers, benefits are paid from a pension trust fund and not from the general funds of the participating employers. Doc. 19-2 at 29-30; *White*, 542 F.3d at 858; *Gilley v. Monsanto Co., Inc.*, 490 F.3d 848, 856 (11th Cir. 2007) ("Our circuit law is clear that no conflict of interest exists where benefits are paid from a trust that is funded through periodic contributions so that the provider incurs no immediate expense as a result of paying benefits.")